**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | | |
|---|---|---|
| FRANK WILLIAMSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV547 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| Defendant. | ) | |


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Frank Williamson, Jr., brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 7, 8). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution for Michael J. Astrue as Defendant in this suit, by operation of Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of April 30, 2001. (Tr. 93-101.) After denial of the applications both initially and on reconsideration (Tr. 36-64), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 69-70). Plaintiff and his non-attorney representative attended the hearing. (Tr. 19-35.) At the outset of the hearing, Plaintiff amended his onset date to November 13, 2006. (Tr. 22.) The ALJ thereafter issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. 7-18) and Plaintiff filed a request for review with the Appeals Council (Tr. 6). The Appeals Council denied that request (Tr. 1-5), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2006.

2.    [Plaintiff] has not engaged in substantial gainful activity since November 13, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

. . .

3.    [Plaintiff] has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

. . .

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

. . .

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform the full range of light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, [Plaintiff] is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day.

(Tr. 12-14.)[2]

The ALJ next found that Plaintiff did not retain the ability to perform his past relevant work as a shipping clerk. (Tr. 17.) In addition, the ALJ concluded that Plaintiff qualified "as an individual closely approaching advanced age," as of his onset date,[3] and that he possessed a limited education, as well as the ability to communicate in English. (Id.) The ALJ further deemed the transferability of Plaintiff's job skills immaterial to the determination of disability because applying the Medical-Vocational Rules directly supported a finding of lack of disability whether or

---

[2] The ALJ found Plaintiff's intellectual limitations, depression and seasonal allergies non-severe. (Tr. 13.)

[3] The ALJ mistakenly referred to Plaintiff as 46 years old on his onset date. (Tr. 17.) Plaintiff was 46 on his original onset date (which, under the regulations, would have qualified him as a "[y]ounger person," 20 C.F.R. §§ 404.1563(c), 416.963(c)). However, Plaintiff was 51 years old on his amended onset date, which the regulations define as a "[p]erson closely approaching advanced age," 20 C.F.R. §§ 404.1563(d), 416.963(d).

not Plaintiff had transferable job skills. (<u>Id.</u>) Specifically, relying on Rule 202.11 of the Medical-Vocational Guidelines, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. 17-18.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, at any time from his amended onset date through the date of decision. (Tr. 18.)

**<u>DISCUSSION</u>**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and

that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

---

[4] "The Social Security Act comprises two disability benefits programs. The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

<u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant

---

[5] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[7]

## <u>Assignments of Error</u>

Plaintiff seeks judicial review of three alleged errors by the ALJ: (1) not calling a vocational expert ("VE") to testify regarding Plaintiff's ability to perform his past relevant work ("PRW") (Docket Entry 7 at 1); (2) not giving "proper weight to all of [Plaintiff's] medically determinable impairments, especially to [his] mental health issues and educational capacity, coupled with his degenerative disk disease" (<u>id.</u> at 4); and (3) not limiting

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Plaintiff to "less than the full range of sedentary work, because
. . . [he] used a cane at times for ambulation and . . . [suffered
from] an inability to perform the minimal standing and walking
required or to do prolonged sitting . . ., [as well as the fact
that he took] pain medication that caused drowsiness (id.)[8]
Defendant contends that the ALJ properly evaluated Plaintiff's
impairments and that substantial evidence supports the ALJ's
determination that Plaintiff retained the RFC for light, unskilled
work. (Docket Entry 9 at 4-11.)

1.   **Vocational Expert**

Plaintiff first argues that the ALJ should have called a VE to
testify regarding whether Plaintiff could perform his PRW as a
shipping clerk. (Docket Entry 7 at 1.) This argument fails. An
ALJ is permitted, but not required, to utilize a VE to help him
determine whether a claimant can perform his PRW. See 20 C.F.R.
§§ 404.1560(b)(2), 416.960(b)(2) ("[ALJ] may use the services of
vocational experts or vocational specialists, or other resources,

_____

[8] Plaintiff additionally moved the Court to "grant an extension of time"
to permit him to retain an attorney. (Docket Entry 7 at 2.) In the alternative,
Plaintiff asked the Court to transfer "this case to a Magistrate Judge, so that
[Plaintiff] can appear with his non-attorney representative to present evidence
and testimony . . .." (Id.) Given the length of time this case has remained
pending without the appearance of an attorney on Plaintiff's behalf, no basis
exists to delay resolution of this case further. Similarly, the narrow scope of
judicial review under 42 U.S.C. § 405(g) does not permit federal district courts
to expand the administrative record certified by the Commissioner. Moreover,
although Section 405(g) permits the Court to order a remand to enable the
Commissioner to consider new and material evidence, Plaintiff proffers no such
evidence here. (See Docket Entry 7.)

9

such as the "Dictionary of Occupational Titles" . . . to obtain evidence [ALJ] needs to help [ALJ] determine whether [claimant] can do [his or her] past relevant work, given [claimant's] residual functional capacity."). Here, Plaintiff completed a Disability Report in which he indicated that his past work as a shipping clerk involved lifting up to 60 to 70 pounds, with frequent lifting of 50 pounds. (Tr. 117-18.) Such requirements correspond to the "heavy" exertion level. See 20 C.F.R. §§ 404.1567(d), 416.967(d) ("Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."). The ALJ thus readily determined, without need of a VE, that Plaintiff's PRW involved exertional activities which far exceeded his RFC of light work. (Tr. 17.) Following that finding (which favored Plaintiff), the ALJ proceeded to step five of the SEP and properly relied upon Rule 202.11 of the Medical-Vocational Guidelines to reach his conclusion of non-disability.[9]

Under these circumstances, the ALJ did not err in determining, without using the services of a VE, that Plaintiff lacked the RFC to perform his PRW and Plaintiff has not shown any prejudice from the ALJ's handling of this matter because the ALJ reached a conclusion about the PRW issue favorable to Plaintiff.

---

[9] Plaintiff does not contest that step five finding. (See Docket Entry 7.)

**2.   Evaluation of Medically Determinable Impairments**

Plaintiff also argues that the ALJ reversibly erred by failing to give adequate weight to Plaintiff's impairments, particularly his mental impairments, educational limitations, and degenerative disc disease.  (Docket Entry 7 at 4.)   As the ALJ properly evaluated all of Plaintiff's medically determinable impairments at steps two, three and four of the SEP, this argument lacks merit.

At step two, the ALJ found Plaintiff's degenerative disc disease a severe impairment and Plaintiff's intellectual deficits and depression non-severe.   (Tr. 13.)   Substantial evidence supports these findings.  An impairment rates as "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities."  SSR 96-3p, Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, at *1.   Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) Capacities for seeing, hearing, and speaking;

> (3) Understanding, carrying out, and remembering simple instructions;

> (4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The plaintiff bears the burden of showing severity at the second step of the SEP. See Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant."). Courts generally consider an impairment in any one of the above-quoted areas severe, unless it qualifies as obviously slight, insignificant, or meaningless. See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984). A plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors alone. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence

that he or she had an impairment and how severe it was
during the time the claimant alleges they were disabled.
20 C.F.R. § 404.1512(c). The evidence that a claimant
has an impairment must come from acceptable medical
sources including licensed physicians or psychologists.
20 C.F.R. § 404.1513(a). A claimant's statements
regarding the severity of an impairment is [sic] not
sufficient. Adame v. Apfel, 2000 WL 422341 at *3-4 (D.
Kan. March 20, 2000); Flint v. Sullivan, 743 F. Supp.
777, 782 (D. Kan. 1990).

Rivas v. Barnhart, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan.

Aug. 16, 2006) (unpublished).

The ALJ found that Plaintiff's degenerative disc disease

more than minimally impacted his ability to perform basic work

activities (Tr. 12) and substantial evidence supports that finding

(Tr. 24-29, 32, 116, 179-82, 191, 203-04, 207-10, 215-22, 228, 232-

39). With regard to mental impairments, the ALJ correctly

determined that Plaintiff failed to meet the step two severity

burden. No evidence of record suggests that Plaintiff's

intellectual and educational deficits had more than a minimal

impact on his ability to perform basic work activities.

As specifically concerns understanding, remembering and

carrying out simple instructions, the ALJ noted that, during a

consultative mental examination conducted by Julia Brannon, Ph.D.,

Plaintiff maintained his concentration and attention well enough to

complete intelligence testing. (Tr. 13; see also Tr. 193-96.)

Indeed, Dr. Brannon specifically opined that Plaintiff "appeared to

understand simple instructions and followed directions." (Tr.

13

194.)[10]  The ALJ further observed that, despite Plaintiff's mental and educational limitations, in his PRW as a shipping clerk, he wrote reports, completed forms and otherwise kept track of items sent and received, and served as a lead worker for a portion of his time.  (Tr. 13; see also Tr. 33-34, 117-18.)[11]  Thus, substantial evidence supports the ALJ's non-severity finding regarding Plaintiff's intellectual and educational limitations.

Regarding alleged depression, the ALJ correctly noted that Plaintiff did not undergo any treatment, take any medication or require any hospitalizations for this condition.  (Tr. 13.) Moreover, the ALJ emphasized that Plaintiff maintained his ability to live alone, drive, grocery shop, count change, cook, read and visit with others.  (Id.; see also Tr. 21, 24, 127, 128, 129, 194.) This evidence supports the ALJ's findings that Plaintiff had only minimal limitations in his daily activities, social functioning and concentration, persistence and pace, with no episodes of

_____

[10] State agency psychologists' opinions that Plaintiff could understand, remember and carry out simple instructions (Tr. 211-14, 228) and Plaintiff's opinion that his ability to follow written and oral instructions remained "good" (Tr. 130), further support Dr. Brannon's observation.  Additionally, as the ALJ noted (Tr. 13), Plaintiff's sister similarly rated his ability to follow written instructions as "pretty good" and oral instructions as "good" (Tr. 139).

[11] In fact, Plaintiff worked as a shipping clerk for approximately 28 to 29 years, i.e., from 1972 until April 30, 2001.  (Tr. 117.)  Moreover, no record evidence suggests that Plaintiff's mental functioning declined after he ceased work as a shipping clerk.  (See, e.g., Tr. 196 (setting forth Dr. Brannon's view that Plaintiff's "low aptitude appears to be a lifelong problem and there is no evidence to support a recent decrease in functioning")).

decompensation. (Tr. 13.) Substantial evidence thus supports the ALJ's non-severity finding regarding Plaintiff's depression.[12]

At step three, the ALJ determined that Plaintiff's degenerative disc disease did not meet or equal any of the listed impairments in Section 1.00 (Musculoskeletal System) of the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.00 et seq. (Tr. 13-14.) The ALJ specifically considered Listing 1.04, 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04, which encompasses Disorders of the Spine, including degenerative disc disease. (Tr. 13-14.) The ALJ found that the weight of the medical evidence failed to show that Plaintiff's degenerative disc disease manifested any of the criteria required for subsections A (nerve root compression), B (spinal arachnoiditis), or C (lumbar spinal stenosis) of Listing 1.04. (Tr. 13-14.)

Contrary to the ALJ's finding, magnetic resonance imaging ("MRI") tests of Plaintiff's lumbar and thoracic spines on November 15, 2006, did show nerve root compression and stenosis at the L3-L4

---

[12] Even if the ALJ erred by finding Plaintiff's mental impairments non-severe, such a finding constitutes harmless error where the ALJ found Plaintiff's degenerative disc disease severe and proceeded to the remaining steps of the SEP and addressed all of Plaintiff's limitations (regardless of severity) in fashioning his RFC. See Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Hancock v. Astrue, No. 1:09CV87, 2012 WL 1267888, at *6 (M.D.N.C. Apr. 16, 2012) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. July 9, 2012) (Schroeder, J.) (unpublished); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W.Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579-80 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished).

and T10-T11 levels (see Tr. 207-10), and no contradictory evidence exists in the record. In addition, persuasive evidence exists of limitation in Plaintiff's lumbar range of motion. (See Tr. 182, 203.) However, the ALJ correctly concluded that the weight of the medical evidence did not document neuro-anatomic distribution of pain; motor, reflex and sensory loss; positive supine and sitting straight-leg raising tests; spinal arachnoiditis; or stenosis resulting in pseudoclaudication. To show that his condition meets a listed impairment, Plaintiff must establish that his impairment "meet[s] *all* of the specified medical criteria" that relate to such listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Thus, substantial evidence supports the ALJ's determination that Plaintiff's degenerative disc disease did not meet or equal the requirements of Listing 1.04. Moreover, because substantial evidence supports the ALJ's non-severity determination regarding Plaintiff's mental impairments, the ALJ did not have a duty to determine whether Plaintiff's mental impairments met or equaled any of the listed impairments. Pritchett v. Astrue, 220 F. App'x 790, 792 (10th Cir. 2007) (citing 20 C.F.R. § 404.1525(a)).

At step four, the ALJ gave proper weight to all of Plaintiff's medically determinable impairments in formulating his RFC. The ALJ limited Plaintiff to light work, which entails lifting no more than 20 pounds occasionally and 10 pounds frequently, see 20 C.F.R.

§§ 404.1567(b), 416.967(b), as a result of his degenerative disc disease. (Tr. 15.) The opinions of consultative examiner Dr. Joseph Guarino (who assessed a less restrictive lifting limitation of 25 to 30 pounds) (Tr. 179-82) and the state agency physicians (who found Plaintiff capable of medium work (up to 50 pounds of lifting, 20 C.F.R. §§ 404.1567(c), 416.967(c))) (Tr. 215-22, 232-39) support that finding. Moreover, the ALJ restricted Plaintiff to unskilled work as a result of his intellectual and educational limitations. (Tr. 15.) As discussed above, the record supports a finding that Plaintiff could understand, remember and carry out simple instructions, including as reflected by his extensive work history as a shipping clerk and the absence of signs of decline.

In sum, the ALJ properly evaluated all of Plaintiff's medically determinable impairments at steps two, three and four of the SEP and substantial evidence supports his findings.

3. **Residual Functional Capacity**

As a final matter, Plaintiff asserts that the ALJ should have limited Plaintiff's RFC to less than a full range of sedentary work. (Docket Entry 7 at 4.) To support this position, Plaintiff cites his occasional use of a cane for ambulation, claims an inability to perform even minimal standing and walking or prolonged sitting due to pain, and alleges "drowsiness" from pain medication. (Id.) Substantial evidence supports the ALJ's decision not to

limit Plaintiff to less than a full range of sedentary work due to the alleged limitations identified by Plaintiff. As a result, this assignment of error falls short. See Nelson v. Colvin, Civil Action No. 1:12-1050-TLW, 2013 WL 4495983, at *16 (D.S.C. Aug. 20, 2013) (unpublished) (concluding that "[b]ecause the ALJ's determination not to fully accept [the] [p]laintiff's alleged limitations, including her inability to sit for prolonged periods, is supported by substantial evidence, . . . [the ALJ] did not err in excluding [the plaintiff's] alleged sitting limitations from her RFC"); see also Lewis v. Astrue, No. 5:09CV412-FL, 2009 WL 2579644, at *4 (E.D.N.C. Aug. 17, 2009) (unpublished) ("In determining [the] plaintiff had an RFC for work at the light exertional level, the ALJ performed his duty to weigh the evidence, resolve conflicts in the evidence, make findings, and arrive at a conclusion.").

In regards to Plaintiff's use of a cane and alleged inability to stand and walk for even minimal periods, he admitted only using the case occasionally and reported falling only once in the year preceding the hearing. (Tr. 26-27.) Moreover, the record evidence reflects that none of Plaintiff's doctors prescribed a cane or even recommended its use. (Tr. 26, 188-91.) Additionally, Plaintiff admitted that he lived on an upper floor of his apartment building and could climb and descend the stairs, albeit with pain. (Tr. 26, 197.) Plaintiff's physicians and disability interviewers noted no

abnormalities in Plaintiff's gait. (Tr. 113, 180, 193, 204.) The
state agency consultants concluded that Plaintiff retained the
ability to stand and walk for up to six hours in an eight-hour
workday. (Tr. 216, 232.) Under these circumstances, the ALJ did
not err in failing to treat Plaintiff's self-prescribed and
occasional use of a cane and reports of pain on stairs as requiring
an RFC for less than a full range of sedentary work. See, e.g.,
Stewart v. Colvin, No. 1:12-CV-039-BL ECF, 2013 WL 1979738, at *4-6
(N.D. Tex. May 14, 2013) (unpublished) (upholding as supported by
substantial evidence ALJ's decision not to include limitations in
RFC based on the plaintiff's use of cane, where no evidence existed
of medical necessity); Penick v. Astrue, No. 3:08CV549, 2009 WL
3055446, at *9 (E.D. Va. Sept. 23, 2009) (unpublished) ("An ALJ is
allowed to rely on an RFC assessment by someone such as Dr.
Chaplin, based on his qualifications as a highly qualified state
agency consultant . . . ." (citing 20 C.F.R. § 404.1527(f)(2)(i))).

Nor does the record mandate a finding that Plaintiff lacked
the requisite ability to stand, to walk, or to sit for prolonged
periods due to pain more generally. In addition to their above-
referenced findings regarding standing and walking, the state
agency physicians determined that Plaintiff could sit for up to six
hours in an eight-hour workday. (Tr. 216, 233.) Moreover, the ALJ
fully analyzed Plaintiff's subjective complaints of pain under 20

C.F.R. §§ 404.1529 and 416.929, including by considering the objective medical evidence, Plaintiff's testimony about his pain, and evidence of his daily activities. (Tr. 14-16.) The ALJ thereafter found Plaintiff's complaints of pain not fully credible (Tr. 15), a finding not specifically challenged (see Docket Entry 7), which the Court should deem supported by substantial evidence. Under these circumstances, the ALJ's failure to further limit Plaintiff's RFC because of alleged pain does not constitute error. See Stallworth v. Commissioner of Soc. Sec., No. 1:12cv496, 2013 WL 2897879, at *10 (S.D. Ohio Jun. 13, 2013) (unpublished) (finding ALJ's failure to include additional RFC limitations based on pain fell within ALJ's "zone of choice" because supported by substantial evidence); Penick, 2009 WL 3055446, at *9 (recognizing general right of ALJ to rely on state agency consultants).

Finally, Plaintiff claims that "drowsiness" from pain medication should have caused the ALJ to limit Plaintiff to less than a full range of sedentary work. (Docket Entry 7 at 4.) The record, however, does not warrant that conclusion. On a Disability Report submitted on September 21, 2006, Plaintiff did not identify drowsiness as a limitation, listed only Advil and Motrin as medications, and denied any medication side effects. (Tr. 115-21.) Although Plaintiff indicated in a subsequent Disability Report that he had begun taking the pain medication "Ultram" which made him

"drowsy" (Tr. 145-51), he also reported to the prescribing doctor, Andrew B. Dill, M.D., that he did not take the Ultram because he could not afford it (Tr. 188). Plaintiff reiterated that he could not pay for medication beyond Tylenol and Advil to consultative examiner Dr. Brannon in January 2007. (Tr. 193.) Moreover, during his hearing on April 24, 2009, Plaintiff did not describe any drowsiness caused by pain medication (Tr. 19-35) and, in fact, testified that he took only over the counter medication for pain (Tr. 25). Substantial evidence thus supports the ALJ's exclusion from the RFC of any limitations based on "drowsiness."

Accordingly, the ALJ acted properly in declining to limit Plaintiff to less than a full range of sedentary work.

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be affirmed, Defendant's Motion for Judgment on the Pleadings (Docket Entry 8) be granted, and Plaintiff's Motion seeking to reverse the Commissioner and/or remand his case (Docket Entry 7) be denied.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

February 5, 2014